IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02360-RM-STV

BEIJING QIYI CENTURY SCIENCE & TECHNOLOGY CO., LTD. and
BEIJING IQIYI SCIENCE & TECHNOLOGY CO., LTD.,

    Plaintiffs,

v.

SHENZHEN QIYI INNOVATIONS TECHNOLOGY CO., LTD.,

    Defendant.
_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

    This matter is before the Court on (1) Plaintiffs' Motion for Alternative Service of Process (the "Motion for Alternative Service") [#15] and (2) Plaintiffs' Motion to Continue Scheduling Conference and Related Deadlines (the "Motion to Continue") [#13]. Both motions have been referred to this Court. [#14, 16] For the following reasons, the Motion for Alternative Service and the Motion to Continue are both **GRANTED**.

**I.    BACKGROUND[1]**

    Plaintiff Beijing QIYI Century Science & Technology Co., Ltd. and Plaintiff Beijing iQIYI Science & Technology Co., Ltd. (collectively, "Beijing QIYI") are Chinese limited companies that are each a subsidiary or affiliated company of iQIYI, Inc., a publicly-traded Chinese company. [#1 at ¶¶ 4-6] Beijing QIYI (together with its parent and

---

[1] The Court draws factual allegations from the Complaint [#1] to provide context for the instant motions.

affiliated companies) is one of the largest providers in the world of on-line content, programming, and entertainment services, and is sometimes referred to as "the Netflix of China." [*Id.* at ¶¶ 8-9] Beijing QIYI "has developed a diversified offering of services in addition to its on-line, streaming, and downloadable content offerings that includes membership services, online advertising services, live broadcasting, online games, online literature, e-commerce, and related services." [*Id.* at ¶ 10] Since at least as early as 2011, Beijing QIYI (including through its parent company, licensees and affiliates) has used a stylized version of IQIYI (the "IQIYI Mark") throughout the United States in connection with the promotion, advertising, offering, and sale of its various goods and services. [*Id.* at ¶ 13] As a result of its widespread, continuous and substantially exclusive use of the IQIYI Mark to identify its goods and services, Beijing QIYI contends that it "owns valid and subsisting federal statutory and common law rights to the IQIYI Mark." [*Id.* at ¶ 15]

According to the Complaint, Defendant Shenzhen QiYi Innovations Technology Co., Ltd., a Chinese limited company, is a start-up that began operating in 2016. [*Id.* at ¶¶ 7, 21] Defendant manufactures, distributes, advertises, and sells a variety of products and services, including products and software for use with mobile devices and for enhancing or enabling the use of those devices with multimedia services. [*Id.* at ¶ 24] Plaintiffs contend that, "[w]ell after Beijing QIYI had coined and built its multi-billion business under its IQIYI Mark throughout the United States and the world, Defendant adopted a confusingly similar tradename, Shenzhen QIYI," and began using marks similar to the IQIYI Mark (the "Infringing Mark") to sell goods into the United States. [*Id.* at ¶ 22] Plaintiffs allege that "Defendant was aware of Beijing QIYI's well-known IQIYI

Mark and intentionally selected its Infringing Mark so as to trade off the goodwill and value associated with Beijing QIYI's IQIYI Mark." [*Id.* at ¶ 23]  Plaintiffs further allege that, despite its knowledge of the IQIYI Mark, on May 16, 2017, Defendant obtained a trademark for the Infringing Mark from the United States Patent and Trademark Office ("USPTO") by making false statements and omissions. [*Id.* at ¶¶ 29-36]  As a result, when Beijing QIYI filed an application to register the IQIYI Mark, the USPTO refused to register this application as to certain goods due to a likelihood of confusion with Defendant's Infringing Mark. [*Id.* at ¶ 38]

On September 14, 2018, Plaintiffs filed the instant lawsuit asserting claims against Defendant for trademark infringement and cancellation of the registration of Defendant's Infringing Mark. [*Id.* at 11-14]  On September 26, 2018, this Court issued an order setting a Scheduling Conference for December 17, 2018. [#12]  To date, Defendant has neither been served nor entered an appearance in the lawsuit.

In addition to the current litigation, Plaintiffs and Defendant also are engaged in at least three other legal proceedings involving the IQIYI Mark: (1) a cancellation proceeding at the UPTPO's Trademark Trial and Appeal Board (the "TTAB Proceeding"), (2) a trademark litigation filed by Beijing QIYI against Defendant in China (the "China Proceeding"), and (3) a trademark opposition proceeding in the European Union (the "EU Proceeding"). [#15-1 at ¶ 2]

## II.     ANALYSIS

### A.     Motion for Alternative Service

Through the Motion for Alternative Service, Plaintiffs seek an order of the Court authorizing service of process on Defendant via email to Defendant and its U.S. counsel

3

in the TTAB Proceeding.  [#15 at 1-2]  Plaintiffs represent that, upon filing the instant lawsuit, they "promptly initiated service under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the 'Hague Convention')."  [*Id.* at 4]  On October 18, 2018, Plaintiffs sent a request for service abroad pursuant to the procedures of the Hague Convention to the Ministry of Justice of China.  [#15-1 at ¶ 4]  Plaintiffs contend, however, that service through the Hague Convention in China "may often take longer than a year and there is no guarantee service will ever be effected."  [#15 at 4]  As a result, in addition to pursuing service through the Hague Convention, Plaintiffs also sought Defendant's agreement to a waiver of service.

On September 21, 2018, counsel for Plaintiffs sent a request to waive service pursuant to Federal Rule of Civil Procedure 4 (a "Waiver Package") to an attorney who had represented Defendant in pre-suit negotiations and had previously made an offer of settlement on behalf of Defendant, but, in response to the Waiver Package, the attorney stated that he was not representing Defendant in connection with the instant litigation.  [#15-1 at ¶ 3]  On November 5, 2018, Plaintiffs sent a Waiver Package to attorneys who had originally entered an appearance on behalf of Defendant in the TTAB Proceeding.  [*Id.* at ¶ 5]  One of those attorneys responded that he had forwarded the Waiver Package to the Chinese Firm that had hired him.  [*Id.*]  On November 21, 2018, Plaintiffs sent a Waiver Package to the individual and email address that Defendant had designated as its agent for service of process in the TTAB Proceeding.  [*Id.* at ¶ 6]  In the TTAB Proceeding, service was effectuated using this email address, and Defendant responded, retained counsel, and filed an answer.  [*Id.*]  On November 26, 2018, Plaintiffs sent a Waiver Package to the attorney who represents Defendant in the EU

Proceeding. [*Id.* at ¶ 7] The attorney acknowledged receipt and said that he would forward the request to Defendant's Chinese counsel. [*Id.*] On December 3, 2018, Plaintiffs sent a Waiver Package to the attorney who currently represents Defendant in the TTAB Proceeding and discussed the request with that attorney during a conference in the TTAB Proceeding. [*Id.* at ¶ 8] To date, despite multiple follow-up communications, none of the attorneys to whom the Waiver Package was sent have returned a signed waiver or otherwise indicated that Defendant will agree to waive service. [*Id.* at ¶ 9]

Federal Rule of Civil Procedure 4(h) provides, in relevant part, that a foreign corporation or unincorporated association may be served "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery." Rule 4(f)(1) allows service "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Rule 4(f)(3) also allows service "by other means not prohibited by international agreement, as the court orders." "Courts have held that Rule 4(f) does not create a hierarchy among its subsections dictating that one form of service is favored over another." *Garb Oil & Power Corp. v. Titan Int'l Sec., Inc.*, No. 2:17-CV-00762-PMW, 2018 WL 4401737, at *1 (D. Utah Sept. 14, 2018) (collecting cases). "Accordingly, 'service of process under Rule 4(f)(3) is neither a last resort nor extraordinary relief.'" *Id.* (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002)). To comply with due process, any means of service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the

5

pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, Plaintiffs seek leave of the Court to serve Defendant by email sent to Defendant and its U.S. counsel in the TTAB Proceeding. Numerous courts have found that neither method of service is prohibited by any international agreement and thus have permitted service on Chinese defendants by email and/or by substituted service on legal counsel pursuant to Rule 4(f)(3).[2] *See, e.g.*, *Jackson Lab. v. Nanjing Univ.*, No. 1:17-CV-00363-GZS, 2018 WL 615667, at *4 (D. Me. Jan. 29, 2018) (collecting cases allowing service by email pursuant to Rule 4(f)(3)); *Micron Tech., Inc. v. United Microelectronics Corp.*, No. 17-CV-06932-MMC, 2018 WL 6069646, at *2 (N.D. Cal. Nov. 20, 2018) (collecting cases finding that service upon US-based counsel does not violate international law). The Court thus finds that the requested forms of alternative service are available methods of service upon Defendant pursuant to Rule 4(f)(3).

The Court also finds that granting Plaintiffs leave to effectuate service through these alternative methods pursuant to Rule 4(f)(3) is justified under the circumstances

---

[2] "Article 10 of the Hague Convention states that '*[p]rovided the State of destination does not object*, the present Convention shall not interfere with . . . the freedom to send judicial documents, by postal channels, directly to persons abroad.'" *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 331 (S.D.N.Y. 2015) (emphasis in original) (quoting Hague Convention art. 10(a), November 15, 1965). Because China has objected to Article 10, courts have held that service "by postal channels" to defendants located in China would violate the Hague Convention and thus is not a permitted form of alternative service under Rule 4(f)(3). *Id.* Although some courts have held that email constitutes a "postal channel" and thus that service by email is not permitted under Rule 4(f)(3), the majority of courts to consider the issue have held that service by email does *not* constitute service "by postal channels" and thus is permitted. *Jackson Lab.*, 2018 WL 615667, at *4 (collecting cases).

presented by this case. Plaintiffs allege that "Defendant's ongoing infringement of Beijing QIYI's trademark through the sales of cheap, substandard products is causing irreparable harm to the [IQIYI] Mark's goodwill and confusion in the market place." [#15 at 8] As a result, Plaintiffs contend that completing service through the Hague Convention—which can take longer than a year—would cause significant delay and hardship. [*Id.*] Such delay and potential hardship appear unnecessary here, given that the parties already are actively engaged in several related proceedings around the world and thus it appears likely that Defendant already is aware of the instant lawsuit but may be "trying to exploit service formalities to delay the lawsuit and prolong its infringing conduct." [*Id.*]

The Court is aware that some courts, including within this district, "have concluded that prior to allowing substituted service under Rule 4(f)(3) 'the court may require that plaintiff show that he made reasonable efforts to serve the defendant [pursuant to the Hague Convention] and that the court's intervention will avoid further unduly burdensome or futile efforts at service.'" *Clancy Sys. Int'l, Inc. v. Image Sensing Sys., Inc.*, No. 16-CV-01848-CMA-KMT, 2016 WL 9344080, at *3 (D. Colo. Oct. 14, 2016) (quoting *Blumedia Inc. v. Sordid Ones BV*, No. 10-CV-01158-MSK-KLM, 2011 WL 42296, at *4 (D. Colo. Jan. 6, 2011)). Nothing in the text of Rule 4(f)(3) or its advisory committee notes, however, suggests such a restrictive view of the availability of alternative service pursuant to Rule 4(f)(3). "By its plain language and syntax, Rule 4(f)(3)'s alternative is not a last resort, nor is it any less favored than service under subsections (1) and (2)." *Jackson Lab.*, 2018 WL 615667, at *3 (quotation omitted). Moreover, Plaintiffs here have initiated service of process under the Hague Convention

7

but have been unable to obtain any assurance from the Chinese authorities when service is likely to be effectuated upon Defendant. [#15-1 at ¶ 4] The Court thus finds that requiring Plaintiffs to continue their efforts to effectuate service pursuant to the Hague Convention prior to authorizing service pursuant to Rule 4(f)(3) would be unduly burdensome and would unnecessarily delay the resolution of this case.

Nor does the Court have any concern that the requested alternative forms of service would offend due process. The email address proposed for service upon Defendant was used to effectuate service in the TTAB Proceeding and, subsequent to that service, Defendant retained counsel and filed an answer in that proceeding. [#15-1 at ¶ 6] Plaintiffs also propose to serve Defendant through their U.S. counsel in the TTAB Proceeding, who is actively involved in the representation of Defendant in that proceeding and thus seemingly in contact with Defendant. [#15-1 at ¶ 8] The requested forms of service thus are reasonably calculated to apprise Defendant of the pendency of this action and afford it an opportunity to respond to the Complaint. Indeed, it appears likely that Defendant already is aware of this lawsuit given Plaintiffs' numerous efforts to obtain Defendant's waiver of service. [*See generally* #15-1]

Accordingly, Plaintiffs' Motion for Alternative Service [#15] is **GRANTED**. Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiffs are granted leave to serve Defendant as follows:

(1) By email to Shenzhen QiYi Innovations Technology Co., Ltd. at sll654143776@gmail.com, the email address identified by Defendant for service in the TTAB Proceeding; and

(2) By email to Mr. Hao Ni (Defendant's current U.S. counsel in the TTAB Proceeding) at hni@nilawfirm.com.

In addition to the documents required to effectuate service, Plaintiffs shall also include a copy of this Order.

### B. Motion to Continue

Plaintiffs' Motion to Continue seeks to vacate the Scheduling Conference currently set for December 17, 2018, and related deadlines, to allow additional time for Plaintiffs to effectuate service upon Defendant. Given that Defendant has not yet appeared or been served with process, the Court agrees that continuing the Scheduling Conference and associated deadlines is prudent.

Accordingly, the Scheduling Conference set for December 17, 2018 at 11:00 a.m., and all associated deadlines, are **VACATED**. This matter is set for a Telephonic Status Conference on January 28, 2019 at 10:00 a.m. before Magistrate Judge Scott. T. Varholak. Counsel for Plaintiffs shall initiate a call among all individuals participating in the Status Conference and then call the Court at **303.335.2365** at the scheduled time.

## III. CONCLUSION

For the foregoing reasons, the Motion for Alternative Service [#15] and the Motion to Continue [#13] are **GRANTED** as set forth in this Order.

DATED: December 13, 2018  BY THE COURT:

  s/Scott T. Varholak
United States Magistrate Judge